IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
No. 2:10-CV-1-BO

| | |
|---|---|
| LARRY WHITE,<br>    Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br>    Defendant. | ORDER |

This matter is before the Court on the parties' Cross-Motions for Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons stated below, Plaintiff's Motion [DE 14] is GRANTED, Defendant's Motion [DE 20] is DENIED and the case is REVERSED and REMANDED for an award of benefits.

## INTRODUCTION

Plaintiff filed an application for DIB and SSI benefits on July 12, 2005, alleging an onset of disability as of April 29, 2005 (Tr. 73-77, 395-98). Plaintiff had insured status for DIB benefits through March 31, 2008 (Tr. 21, Finding 1). In administrative hearing testimony, Plaintiff claimed he stopped working in a hog packing factory as a snout puller due to a diabetic condition and residuals from a previously fractured left ankle (Tr. 425-26).

Plaintiff's applications were denied initially on January 27, 2006, and on reconsideration on August 15, 2006, for the reason that he was able to do less demanding work (Tr. 34-36, 62-64, 65-69). Plaintiff timely filed a request for an administrative hearing on September 14, 2006 (Tr. 61). A hearing was held on June 4, 2008, before administrative law judge (ALJ) O'Sullivan

(Tr. 416-446). Plaintiff was represented by counsel and a vocational expert and medical expert testified.

On August 12, 2008, the ALJ issued a written decision denying Plaintiff benefits (Tr. 18-29). In his written decision, the ALJ found that Plaintiff had the residual functional capacity (RFC) to perform a wide range of light work with some postural, environmental, and mental restrictions (Tr. 22, Finding 5). Specifically, the ALJ found that Plaintiff requires a work environment which allows him to sit/stand at will and to perform only simple, routine, repetitive tasks in a low-paced, low-production work setting with limited contact with the general public. *Id.* The ALJ concluded that although Plaintiff could not return to his past relevant work (Tr. 27, Finding 6), he could perform those jobs identified by the vocational expert (Tr. 28, Finding 10).

On November 24, 2009, the Appeals Council denied Plaintiff's request for review (Tr. 3-6), making the ALJ's decision the final decision of the Commissioner. Plaintiff now seeks judicial review.

## STANDARD OF REVIEW

Under the Social Security Act, 42 U.S.C. § 405(g), this Court's review of the Commissioner's decision is limited to determining whether the decision, as a whole, is supported by substantial evidence and whether the Commissioner employed the correct legal standard. Substantial evidence consists of more than a mere scintilla of evidence, but may be less than a preponderance of evidence. *Richardson v. Perales,* 402 U.S. 389, 401 (1971).

I.  The Five-Step Sequential Evaluation

Regulations issued by the Commissioner establish a five-step sequential evaluation process to be followed in a disability case. 20 C.F.R. § 416.920. At step one, if the claimant is

2

currently engaged in substantial gainful activity, the claim is denied. When substantial gainful activity is not an issue, at step two, the claim is denied if the claimant does not have a severe impairment or combination of impairments significantly limiting him or her from performing basic work activities. If the claimant has a severe impairment, at step three, the claimant's impairment is compared to those in the Listing of Impairments (Listing), 20 C.F.R. § 404, Subpart P, App. 1; if the impairment meets or equals a Listing, disability is conclusively presumed. If the claimant's impairment does not meet or equal a Listing, at step four, the claimant's residual functional capacity (RFC) is assessed to determine if the claimant can perform his or her past work despite the impairments; if so, the claim is denied. If the claimant cannot perform past relevant work, at step five, the burden shifts to the Commissioner to show that the claimant, based on his or her age, education, work experience, and RFC, can perform other substantial gainful work.

Here, the ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520. At step one the ALJ determined that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of April 29, 2005. At step two, the ALJ determined that Plaintiff had impaired cognitive functioning, residuals from a fracture of the left ankle, a history of carpal tunnel syndrome in the right upper extremity, diabetes mellitus, obstructive sleep apnea, and obesity, and that these conditions were severe within the meanings of the regulations. At step three, the ALJ reviewed the medical evidence and determined that it did not indicate that Plaintiff had an impairment or combination of impairments that were of a severity to meet or medically equal the criteria of one of the listed impairments described in 20 C.F.R. Part 404, Subpart P. Appendix 1. The ALJ reviewed the medical and non-medical evidence, and

determined that Plaintiff retained the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with postural, environmental, and mental restrictions. At step four, the ALJ concluded that Plaintiff's residual functional capacity precluded performance of his past relevant work. At step five, the ALJ concluded that considering claimant's age, education, work experience, and residual functional capacity, jobs exist in significant numbers in the national economy that the Plaintiff could perform. Accordingly, the ALJ concluded that Plaintiff was not under a disability as defined in the Act.

## DISCUSSION

The central issue on appeal is whether the Secretary's finding that Plaintiff did not meet the requirements of a listed impairment as described in 20 C.F.R. Part 404, Subpart P. Appendix 1 is supported by substantial evidence. It is the opinion of the Court that the Secretary's finding is not supported by substantial evidence.

Listing 12.05C requires a claimant to establish a "valid verbal, performance, or full scale I.Q. of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." Appendix 1 of 20 C.F.R., Part 404, Subpart P. 12.00. Thus, Listing 12.05C contains both an IQ prong and a significant limitation prong. Moreover, to establish mental retardation under Listing 12.05, the claimant must show "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." *Id.*, at § 12.05 (emphasis added).

With respect to the IQ prong, valid psychological testing showed Plaintiff to have performance scale I.Q. scores of 70 and 68, verbal scale I.Q. scores of 60, 65 and 70, and full

4

scale I.Q. scores of 64 and 66 (Tr. pp. 102, 105, 307.) I.Q. testing from 1978 when Plaintiff was tested at the age of 19 showed him to have a language I.Q. of 72, a non-language I.Q. of 60, and a total score of 60 (Tr. p. 312.)

Although the ALJ correctly noted that at the age of 18, Plaintiff's I.Q. was measured at 72 (Tr. p. 21), the ALJ failed to note that this score was only Plaintiff's verbal I.Q. and that his non-verbal and total I.Q. scores had been measured at 60 at that time (Tr. pp. 312.) The ALJ may not ignore or omit from discussion evidence that inconveniently fails to support his view of the case. *See Hines v. Barnhart*, 453 F.3d 559, 566 (4th Cir. 2006) ("[a]n ALJ may not select and discuss only that evidence that favors his ultimate conclusion . . . .") quoting *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995). A finding cannot be said to be supported by substantial evidence if it is based upon material misstatements or omissions of evidence that weigh against the ALJ's finding. But that is exactly the case with respect to the ALJ's finding regarding Plaintiff's I.Q. The overwhelming weight of evidence established that the Plaintiff satisfied the IQ prong of Listing 12.05C.

Additionally, the evidence of record established that Plaintiff's low I.Q. manifested itself before age 22. Absent any evidence of a change in his intellectual functioning, it must be assumed that a claimant's I.Q. has remained relatively constant. *Luckey v. U.S. Department of Health and Human Services*, 890 F.2d 666, 668 (4th Cir. 1989). That Plaintiff's I.Q. scores when he was tested at the age of nineteen were so close in range to those obtained when he was an adult confirms that the recent scores accurately reflect his life-long intellectual or cognitive functioning.

The undisputed evidence, moreover, established that Plaintiff suffers from a "physical or

5

Case 2:10-cv-00001-BO Document 25 Filed 12/13/10 Page 5 of 8

other mental impairment imposing an additional and significant work-related limitation of function" as required for the second prong of Listing 12.05C. As the ALJ noted, the Plaintiff suffers from impaired cognitive functioning, residuals from a fracture of the left ankle, a history of carpal tunnel syndrome in the right upper extremity, diabetes mellitus, obstructive sleep apnea and obestiy. Critically, "[t]hese conditions significantly impact the claimant's ability to perform basic work-related activities and are sever as defined in the Social Security regulations." (Tr. p. 21).

Finally, the overwhelming evidence of record established Plaintiff's deficiencies in adaptive functioning required for a finding of mental retardation under Listing 12.05C. Despite graduating from high-school at the age of 20, Plaintiff never learned to read, was in special education classes during school, worked only unskilled jobs, and even as an adult, lived either with his wife, his mother, or his girlfriend and depended on them for many basic household functions (Tr. pp. 101-06, 312-20, 421-24, 429-31.) The evidence overwhelmingly supports a finding that Plaintiff has functioned in the mild mentally retarded range with associated deficits of functioning since well before his 22nd birthday.

The reasons the ALJ cites for finding that Plaintiff did not have deficits of adaptive behavior prior to age 22 are invalid (*See* Tr. p. 21.) First, the ALJ asserted that Plaintiff "obtained a driver's license and took the test himself indicating that his reading abilities are above what is alleged." (Tr. p. 22.) However, the ALJ's statement contradicts the record evidence, which was that Plaintiff "took the driver's test 3 times" and "took the test orally." (Tr. p. 23.) The ALJ's misstatement of fact cannot support his finding that Plaintiff did not have deficits of adaptive functioning prior to the age of 22 or that his ability to read is not as limited as

the evidence otherwise shows.

The ALJ also asserted that Plaintiff's "school records reveal that he received special education resources for reading but that he was not in a special education class as alleged." (Tr. p. 21.) But the ALJ's finding improperly discredits the adaptive deficiencies that Plaintiff endured. That Plaintiff read so poorly as to be placed in special education classes for reading is evidence that he suffered deficits prior to the age of 22. Apparently, the ALJ believed the opposite: that Plaintiff's enrollment in special education classes for reading was somehow indicative of a *lack* of adaptive deficiencies. But, as the record established, teachers commented that Plaintiff was "slow in math" and "slow with his work." (Tr. pp. 313-14.) The psychologist who evaluated him in August 2003 found his achievement levels to be "comparable with those of students assigned basically to special education classes." Plaintiff was still taking remedial reading as of his final year of high school (Tr. p. 320.) Moreover, Dr. Cannon's testimony that Plaintiff's "school records indicate mild mental retardation" fully supports a finding that his deficits of adaptive functioning manifested before the age of 22 (Tr. p. 26.)

The ALJ, in error, cited Plaintiff's grades and the fact that he "graduated high school in June, 1979" with a class rank of 201 out of 335 as supporting a finding that Plaintiff did not suffer deficits of adaptive functioning prior to the age of 22 (Tr. p. 21.) Yet the ALJ failed to mention certain material aspects of Plaintiff's academic record that support a finding that he suffered significant adaptive deficits. Notably, Plaintiff was 20 years old when he finished high school (Tr. p. 317.) Although Plaintiff may have had grades ranging from "70s to as high as the 90s," the ALJ neglected to mention that even in the 12th grade, Plaintiff was still taking remedial reading and that some of the grades he was earning were in remedial classes. By the

7

Case 2:10-cv-00001-BO  Document 25  Filed 12/13/10  Page 7 of 8

end of high school, Plaintiff had not even reached algebra 1 and had only taken general math (Tr. p. 317.) Plaintiff was, furthermore, enrolled in a "practical" curriculum, which had fewer academic requirements than the general one (Tr. p. 320.) Because the school records do not indicate that a student's grades were weighted according to the rigor of the curriculum, one cannot assume from the class rank any particular academic achievement relative to the other students in Plaintiff's graduating class. There is simply not enough information in the record to draw any meaningful inference from Plaintiff's reported class rank.

## CONCLUSION

As the foregoing demonstrates, the decision of the ALJ is not supported by substantial evidence. Accordingly, Plaintiff's Motion for Judgment on the Pleadings is GRANTED, Defendant's Motion for Judgment on the Pleadings is DENIED, and the decision of the Commissioner is REVERSED. The decision of whether to reverse and remand for benefits or reverse and remand for a new hearing is one which "lies within the sound discretion of the district court." *Edwards v. Bowen*, 672 F. Supp. 230, 237 (E.D.N.C. 1987). Accordingly, this case is REMANDED for an award of benefits.

SO ORDERED.

This the __11__ day of December, 2010

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE